### C. L. Aygarn v. W. A. Fraser Company.

#### Gen. No. 4,548.

1. SET-OFF—*when estoppel to assert, arises.* Where the party claiming a set-off has sent a statement of account to the party against whom it is claimed, he is estopped from asserting by way of set-off an amount greater than such sum, in the absence of mistake, unless transactions have arisen subsequent to the sending of the statement.

Action of assumpsit. Appeal from the County Court of Livingston County; the Hon. ARTHUR W. DESELM, Judge, presiding. Heard in this court at the April term, 1905. Affirmed. Opinion filed August 1, 1905. Rehearing denied October 20, 1905.

E. A. SIMMONS, for appellant.

H. E. PAGE and C. C. and L. F. STRAWN, for appellee.

MR. JUSTICE FARMER delivered the opinion of the court. Appellant was engaged in buying grain in Livingston

County and shipping it in car-load lots to Chicago and else-
where for sale.   In 1902 he shipped several car-loads to W.
A. Fraser at Chicago, a commission merchant, for sale in
the market there.   During this time Fraser organized a
corporation for the conduct of his commission business
known as W. A. Fraser Company, and the business of W.
A. Fraser was turned over to it and thereafter conducted
by the corporation.   Appellant continued shipping grain
to W. A. Fraser Company the same as he had done to W.
A. Fraser, and the account was carried on between him
and the corporation the same as it had been before without
any break.   W. A. Fraser was succeeded by W. A. Fraser
Company about May 1, 1902.   When appellant would ship
a car of grain he would draw on appellee with bill of lading
attached for what he claimed was in the neighborhood of
the true value of the load of grain, and these drafts would
be paid by appellee, and when the grain was inspected and
sold, statements would be rendered appellant of the sales.
After the transaction of considerable business between the
parties, appellee claimed appellant had overdrawn with it
and that he was indebted to appellee $346.94, and this suit
was brought in the County Court of Livingston County to
recover that amount with interest.   Appellant pleaded the
general issue with notice of set-off, and also filed pleas of
set-off.   A trial was had by jury resulting in a verdict and
judgment for appellee for $387.41, from which this ap-
peal is prosecuted.

On the trial, appellee offered in evidence a paper marked
"Exhibit 2," and it was stipulated between the parties
that said paper contained a true and correct account
and complete copy of all original papers, original entries
and records of all cars of corn and other grain received
by appellee from appellant, with the date of shipment,
car numbers and grades of grain, official out-turn weight
at Chicago, prices and terms of sale, all payments made
on account of such shipments and the net proceeds of
the sales for account of appellant.   The whole paper was
not admitted, but by the stipulation all that portion of

the account below a pencil line drawn through it by appellant's counsel just above the date May 30, 1902, was, by consent, received in evidence, and the original has been certified up to us for inspection. When the corn, which was the principal grain shipped by appellant, arrived in Chicago, it had to be inspected and graded by a state grain inspector before being sold. Corn grading No. 2 was what is called contract grain and sold for the highest price. Corn grading No. 3 sold for a considerably lower price. On the 14th of July, appellee wired appellant that two cars, giving their numbers, had been graded 3 yellow, and there was no show for a change and the best bid was 70c. No reply was received from appellant to this message, and on the following day appellee wired appellant, "Three Yellow corn (72) fob bottom out," which meant No. 3 yellow corn was worth 72c. with market falling. Appellant replied to that by wire, "Sell at prices named all you have in." On the same day appellee again wired appellant, as we understand after his message was received, "Price wired you was ten cents too high, should be sixty-two." On the same day appellee also wrote appellant a letter explaining they had made a mistake and wired No. 3 yellow corn was worth 72c. when it was in fact intended to say 62c. which was the best price that could be had for it. To this last message and letter appellant made no reply. Appellee receiving no response, appealed from the decision of the inspector grading the corn No. 3 and in accordance with the rules governing such transactions, the cars were placed on what is known as the appeal track until that question was determined. This was done as appellee claims, and as we think the proof shows, in accordance with general instructions before that time given by appellant. On July 10th appellant wrote appellee with reference to grading the corn, "Where you see no chance of raising grade, wire prices obtainable on 3 or 3 yellow. What grades 2 yellow, you do the best you can." The proof showed appellant also gave oral instructions when in the city of Chicago to representatives of appellee to the

same effect.   When the appeal was determined, these two
cars of corn were graded No. 2 and sold five days after
they were received as such, at the prevailing market price
for that grade of corn, and were accounted for by appellee
to appellant on that basis.   July 16th appellee appears to
have written appellant complaining of his overdrawing
his account.   After some other correspondence, which we
do not deem necessary here to refer to, on the 6th of Sep-
tember appellant wrote appellee acknowledging receipt of
their statement charging him with a balance due of $346.94.
In his reply he said he had looked over appellee's telegrams
and the inspection certificates and upon due deliberation
found appellee owed him $25.26, and enclosed the state-
ment of the account.   In this statement he charged appel-
lee with 19½ cents per bushel for the two car-loads of corn
before referred to, amounting to $372.20, and credited it
with their statement against him, $346.94, leaving a bal-
ance due him as he claimed of $25.26.   The basis of his
claim was that appellee should have sold his corn for 85c.
The proof showed, as appellee wired appellant, the "bot-
tom dropped out" of the market and corn declined rapidly.
Appellee receiving no advice to the contrary, pursued the
general instructions given by appellant in appealing from
the decision grading the corn at No. 3, and was not respon-
sible for the delay in making the sale.   The result showed
the appeal was justified, for it was sustained and the corn
graded No. 2, and we are of opinion under the evidence in
this record, appellant is entitled to no set-off on account of
the price at which the grain in these cars was sold, against
the claim of appellee which, by his letter referred to, he
admits to be correct.   Appellant's counsel contend appel-
lee's instructions were to appeal from the inspection if it
thought the grade could be raised, otherwise to sell imme-
diately on the market.   We find no evidence of any such
instructions in this record.   The only instructions on this
subject we have quoted and referred to, and they will bear
no such interpretation as is contended for by counsel.   The
instructions of appellant authorized appellee when the corn

graded No. 2 to sell it for the best price he could get, but if it graded lower than 2 and appellee thought there was a chance by appealing to get the grade raised, it should do so; if in its judgment there was no chance to get the grade raised, it should wire price obtainable for No. 3, and the only reasonable interpretation that can be put upon the instructions to wire prices obtainable for No. 3 was that it should be held until appellant was heard from. These instructions were obeyed, as we understand this evidence, in letter and spirit by appellee, and appellant has no just claim for damages resulting from following his instructions.

Appellee filed with its declaration a copy of the account sued on, which is called by counsel a bill of particulars. It contained the debits and credits between the parties and showed the balance claimed to be due. The first debit item was, "May 1, 1902, To Balance W. A. Fraser $653.56," and the first credit was, "May 6, By sale 113 $693.20." All proof of anything due W. A. Fraser was, on motion of appellant's counsel, stricken out, as this suit was brought in the name of W. A. Fraser Company, a corporation. Thereupon, appellee asked leave to amend its copy of account sued on or bill of particulars, by striking out the first credit item. This was objected to by appellant's counsel, but the objection was overruled and the amendment allowed, and it is very seriously contended that this was erroneous. Clearly the balance due W. A. Fraser could not properly form an item in plaintiff's account, but appellant's counsel contend the credit item stricken out was not an amount that should be credited to appellant on his account with W. A. Fraser, but was a credit to be applied on the account with the corporation. The credit item of $693.20 is on the paper introduced in evidence as " Exhibit 2," but is above the pencil line drawn through it by counsel for defendant. If it is to be considered in evidence, then it appears it was proceeds of the sale of a car of oats received by W. A. Fraser before the business was taken over by the corporation, and, therefore, not any more properly a credit

on the account between appellant and appellee than the
$653.36 was a debit. The testimony of A. Brunswick,
appellee's accountant, tends to show also that this credit
item had reference to the same car the debit item did.
Appellant did not testify on the trial, nor did he call
any witness on his behalf. As we have before stated he
admitted his indebtedness to appellee and the amount
claimed when he sent it a statement of what he claimed to
be entitled to set-off against it. Patterson v. Houston, 92
Ill. App. 624, and cases there cited. He never claimed he
had not received the full returns for all grains shipped, and
on the merits of this case the judgment seems to be so fully
justified that we would not feel warranted in disturbing it
because of some technical error which did not affect the
merits of the case. We are also of opinion appellant was
not prejudiced by any imperfections in instructions given
for appellee, nor by the modification or refusal of instruc-
tions asked by appellant. Our view of the case is that ap-
pellant admitted owing appellee the amount claimed, and
that under the proof he had no right to any set-off against
it. Under such circumstances we feel it our duty to affirm
the judgment, which is accordingly done.

*Affirmed.*